# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUNDANCE ENERGY OKLAHOMA, LLC, d/b/a SEO, LLC, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. CIV-13-991-R ) |
| DAN D. DRILLING CORPORATION, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Dan D. Drilling Corporation's Motion to Compel [Doc. No. 102] and Plaintiff's Motion to Compel [Doc. No. 106]. The parties informed the Court in chambers on January 23, 2015 that all issues in Plaintiff's Motion to Compel have been resolved. Accordingly, that motion is now moot, and the Court will address only Defendant's motion to compel.

Plaintiff has sued Defendant for negligence and breach of contract in its drilling of an oil and gas well ("Rother Well") in Logan County, Oklahoma in December 2012. Compl. 1-2, 4-6. An employee of Defendant was killed in a drilling rig accident at the Rother Well site on December 9, 2012. Doc. No. 118, at 4. Plaintiff alleges that Defendant was negligent in its drilling, operation and maintenance of the Rother Well site and equipment, and in its training and supervision of its employees, and in so doing, breached an oral contract. Compl. 4-5. Plaintiff is a limited liability company whose sole member is Sundance Energy, Inc. ("Sundance"). Doc. No. 118, at 4. Sundance was a

counterclaim defendant in this case, but Defendant recently stipulated to the dismissal of its counterclaims against both Plaintiff and Sundance. Doc. No. 109.

## Timing

Plaintiff first argues that the Court should deny Defendant's motion as untimely because it was filed one day after the discovery deadline. Doc. No. 108, at 6-7. Because the Federal Rules of Civil Procedure do not specify a deadline by which a party must file a motion to compel, it is within the Court's discretion to decide "whether a motion is too tardy to be considered." *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 682 (10th Cir. 2012). The discovery deadline in this case was December 15, 2014. Doc. No. 73, at 1. Defendant filed the present motion on December 16, and this matter came at issue on January 12, 2015. Doc. No. 102; Doc. No. 113. This case is set for trial in February. Doc. No. 73, at 1. The Court finds that, in this case, the motion was filed within a sufficient amount of time for the parties to participate in a hearing on the matter, *see* Doc. No. 150, and for the undersigned to rule on the motion without any delay in the trial date. Thus, the Court will consider the merits of Defendant's motion.

## Nondorf Memorandum

On the day of the accident, James Nondorf, Plaintiff's President, visited the Rother well site and took notes as he spoke with people at the site. Doc. No. 102, at 7. He then used those notes to compose a memorandum addressed to Kip Hunter, Plaintiff's current counsel, and Todd Woolery, Plaintiff's former counsel. *Id.*; Doc. No. 108, at 7-8. In April 2014, Defendant served a set of interrogatories and requests for production on Plaintiff, including a request for "[a]ll documents which evidence, arise out of, or relate to the

investigation of the accident." Doc. No. 102, at 8, Ex. 4, at 10. Plaintiff has not produced the Nondorf memorandum on the grounds that it is protected by the attorney-client privilege and the work product doctrine. Doc. No. 102, Ex. 6, at 7 (Entry 32). Because the Court finds that the memorandum is protected by the attorney-client privilege, it does not address the work product doctrine.

Federal Rule of Evidence 501 provides that state law controls the application of the attorney-client privilege in this case. *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998). Under Oklahoma law,[1] the privilege protects confidential communications between an attorney and a client "who consults [the] attorney with a view towards obtaining legal services or is rendered professional legal services by an attorney." OKLA. STAT. ANN. tit. 12, § 2502(A)(2), (B) (West). To be protected, the communication must be made for the purpose of obtaining legal advice. § 2502(B). The party asserting the privilege has the burden of establishing the privileged status of the communication. *Chandler v. Denton*, 741 P.2d 855, 865 (Okla. 1987).

Defendant argues that the Nondorf memorandum was not made to seek legal advice, but rather is a business document made "merely to convey factual information." Doc. No. 102, at 17. In support of this assertion, it points to Nondorf's deposition testimony in which he stated that he did not prepare the memorandum at anyone's request. *Id.* at 17, Ex. 1, at 4-5. In response, Plaintiff directs the Court to Nondorf's deposition errata page, in which Nondorf corrects his testimony and states that he

---

[1] Because Plaintiff is an Oklahoma company and Sundance is a Colorado company, Defendant contends that the Court must consider both Oklahoma and Colorado law when deciding issues related to attorney-client privilege in this case. Doc. No. 102, at 14. Because Defendant does not find a dispute between Oklahoma and Colorado law on this issue, *see id.* at 16, 22, the Court will address only Oklahoma law.

"gathered the info on [his] own and Mr. Hunter asked [him] to put it in a letter to him." Doc. No. 108, at 8, Ex. 3, at 1.

Defendant has not directed the Court to any Oklahoma authority providing that for a communication to be protected by the attorney-client privilege, the attorney must request that communication from the client. The Court is convinced that Nondorf provided this communication to Hunter for the purpose of obtaining legal advice. Even if Nondorf prepared the memorandum without a request from Hunter, it is still a summary of the facts of a deadly accident on a drilling site that is marked "Attorney-Client Privilege" and sent from the president of a company to that company's attorney. Doc. No. 108, at 8. This is a classic example of a communication protected by the attorney-client privilege. Although it contains "mere facts," those facts are contained within a communication to Plaintiff's counsel, and Defendant was free to obtain such facts when it deposed Nondorf. *See Upjohn Co. v. United States*, 449 U.S. 383, 396 (1981) ("While it would probably be more convenient for the Government to secure the results of petitioner's internal investigation by simply subpoenaing the questionnaires and notes taken by petitioner's attorneys, such considerations of convenience do not overcome the policies served by the attorney-client privilege."). The Court thus denies Defendant's request to compel disclosure of the Nondorf memorandum.

## IMA Communications

In October 2014, Defendant requested "[a]ll documents which evidence or relate to communications between Sundance and IMA or any other insurance broker concerning the December 9, 2012 accident." Doc. No. 102, at 10, Ex. 7, at 5. Plaintiff responded to

that request with a Supplemental Privilege Log. *Id.*, Ex. 8. At issue in this motion are four entries in the log, entries 67, 71, 72, and 73. Doc. No. 102, at 11. Plaintiff declined to produce these entries based on attorney-client privilege, the work product doctrine, and the common interest privilege. *Id*, Ex. 8, at 4-5. Because the Court finds that these communications are protected by the attorney-client privilege, it does not address the work product doctrine or the common interest privilege.

Entries 71-73 are email chains from Kip Hunter to Lynne Wieder of IMA (Plaintiff's insurance broker), Todd Woolery, and Sundance management regarding the Rother Well accident. Doc. No. 102, at 11, Ex. 8, at 5. Entry 67 is an email chain between Joel Dietz of IMA, Kip Hunter, and Sundance management, also concerning the December 9 accident. Doc. No. 102, Ex. 8, at 4. Attached to the Entry 67 email chain is a memorandum written by Woolery "regarding legal and factual issues arising from the December 9, 2012 incident."[2] Doc. No. 102, Ex. 9, at 2.

Defendant first implies that Entries 67 and 71-73 are covered under the Court's Order compelling Plaintiff to disclose the documents sought in Request No. 12, "[a]ll documents which evidence, arise out of, or relate to the investigation of the accident, including .… all communications … between [Plaintiff's] legal counsel and Chubb or other insurers." *See* Doc. No. 102, at 13, Ex. 5, at 16; Doc. No. 93, at 7. But in ruling on Defendant's first motion to compel, the Court dealt only with whether "information

---

[2] Defendant initially asked the Court to compel Plaintiff to produce two memoranda, one of which was the Woolery memorandum written in August 2013, and the other was a memorandum written for another case in 2007. *See* Doc. No. 108, at 23-24. At the hearing on the motions to compel, Defendant informed the Court that it had spoken with Plaintiff's counsel and agreed to withdraw its request for the 2007 memorandum.

5

shared between Sundance's counsel and its insurance carrier" was protected by the work product doctrine. Doc. No. 93, at 5. Entries 67 and 71-73 relate to information shared with IMA, Plaintiff's insurance broker, not its insurance carrier. Accordingly, these documents do not fall under the Court's November 13, 2014 Order.

### A. Relevance

Plaintiff first argues that the information in Entries 71-73 is not relevant to any issue in this case because of the Court's summary judgment ruling. Doc. No. 108, at 13-15. Under Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Defendant contends that it is likely these documents contain evidence of the existence and terms of an implied contract to drill the Rother Well, and that they could lead to discoverable evidence regarding "the nature and amount of expenses SEO claims to have incurred from the loss of the Rother well." Doc. No. 113, at 5-6. Simply from the description of the email chains provided in the privilege log, which states that the communications concern the "incident at [the] Rother well site," Doc. No. 102, Ex. 8, at 4-5, the Court finds that it is reasonably likely that these communications will lead to the discovery of admissible evidence. Thus, Entries 71-73 are relevant to the issues remaining in this case.

### B. Attorney-Client Privilege

Plaintiff next argues that Entries 67 and 71-73 are protected by the attorney-client privilege. Doc. No. 108, at 15. Defendant contends that these communications were not

made to obtain legal advice, but "for business purposes only, namely to aid Sundance and SEO in determining whether or not to make an insurance claim under the excess operator's policy." Doc. No. 102, at 21. Plaintiff argues that "engaging the services of an insurance broker to determine whether to make a claim" constitutes a request for legal advice. Doc. No. 108, at 15. Defendant argues that even if the communications are protected by the attorney-client privilege, Plaintiff waived the privilege when it included IMA in the emails. Doc. No. 113, at 7.

To be protected under the attorney-client privilege, the communication must be confidential. § 2502(B). "A communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." § 2502 (A)(5). The Court's *in camera* review of Entry 67 indicates that Joel Dietz, an IMA Account Executive, was actively involved in furthering Hunter's representation of Plaintiff with regard to coverage under the Berkley OEE policy for the December 9 accident. It is clear from the email chain that providing Dietz with Woolery's August 2013 memorandum assisted Dietz in analyzing the possibility of coverage under the Berkley policy, which, in turn, furthered Hunter's representation of Plaintiff on this particular issue. Thus, the Court finds that Plaintiff has satisfied its burden of demonstrating that Entry 67, including the attached Woolery memorandum, is protected by the attorney-client privilege.

Plaintiff has also satisfied its burden regarding Entries 71-73. An *in camera* inspection of these email chains reveals that IMA employee Lynne Wieder was included

7

in these communications to assist Hunter in managing the legal issues that resulted from the Rother Well accident. Consequently, Entries 67, 71, 72, and 73 are all confidential communications between Plaintiff and its attorneys made for the purpose of obtaining legal advice. They are thus protected by the attorney-client privilege, *see* § 2502(B)(1), and the Court denies Defendant's request to compel disclosure of these communications.

## Conclusion

In accordance with the foregoing, the Nondorf memorandum and Entries 67, 71, 72, and 73 of Plaintiff's Supplemental Privilege Log [Doc. No. 102, Ex. 8, at 4-5] are protected by the attorney-client privilege. Consequently, Defendant Dan D. Drilling Corporation's Motion to Compel [Doc. No. 102] is DENIED. Further, Plaintiff's Motion to Compel [Doc. No. 106] is DENIED as moot.

IT IS SO ORDERED this 26th day of January, 2015.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE