# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUNDANCE ENERGY OKLAHOMA, LLC, d/b/a SEO, LLC, and SUNDANCE ENERGY, INC., | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | )  Case No. CIV-13-991-R ) |
| DAN D. DRILLING CORPORATION, | ) ) ) ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant's Motion for New Trial. Doc. No. 212. On February 17, 2015, the jury returned a verdict in favor of Plaintiffs ("Sundance") on their breach of contract and negligence claims against Defendant. Doc. Nos. 194-95. It found that Defendant was grossly negligent and that this gross negligence was a direct cause of Sundance's injuries, and assessed damages in the amount of $1.2 million. Doc. No. 193, at 1; Doc. No. 196. For the following reasons, the motion for a new trial is denied.

## Standard of Review

Defendant moves for relief from the jury's verdict in favor of Sundance pursuant to Rule 59 of the Federal Rules of Civil Procedure. Doc. No. 212, at 6. Rule 59 authorizes a district court to grant a new trial "on all or some of the issues—and to any party" in an action that has been tried by a jury, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59 (a). An error justifies

a new trial only if the error "prejudicially affects a substantial right of a party." *Weaver v. Blake*, 454 F.3d 1087, 1091 (10th Cir. 2006) (citation omitted). "Evidence admitted in error can only be prejudicial if it can be reasonably concluded that with or without such evidence, there would have been a contrary result." *Id.* (citations omitted) (internal quotation marks omitted). Decisions on the admissibility of evidence "must stand unless the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (citation omitted) (internal quotation marks omitted).

## Analysis

### A. Gross Negligence

Defendant first contends that the Court erred in finding that, under Oklahoma law, it cannot limit its liability for gross negligence through the use of an exculpatory provision in a commercial contract negotiated between parties of equal bargaining power. Doc. No. 212, at 8.[1] It argues that there is no reported case in which an Oklahoma appellate court has invalidated an exculpatory clause because it limited a party's liability for gross negligence. *Id.* at 9.

The Supreme Court of Oklahoma has stated that a party cannot contractually relieve itself from liability for gross negligence. *Schmidt v. United States*, 912 P.2d 871, 872 (Okla. 1996) ("We *note* that exculpatory clauses cannot relieve one from liability for fraud, willful injury, gross negligence or violation of the law." (footnote omitted)). Its

---

[1] Therefore, Defendant asserts, it was error for the Court to include Jury Instruction No. 24 [Doc. No. 190, at 26 ("If you find Section 14 to be part of the parties' implied contract for the drilling of the Rother Well, that clause cannot relieve Dan D. from liability for gross negligence.")] and Interrogatory No. 1 [Doc. No. 193, at 1 (instructing jurors that if they find that Dan D. was grossly negligent, and that this gross negligence was a direct cause of Sundance's injuries, to find in favor of Sundance on the Breach of Contract Verdict Form and to fill out the White Verdict Form for Negligence)]. Doc. No. 212, at 9.

2

statement is consistent with an opinion issued by the same court four year earlier, in which it noted that "[c]ourts have refused to uphold limitation of liability clauses where the defendant's conduct constituted gross negligence." *Elsken v. Network Multi-Family Sec. Corp.*, 838 P.2d 1007, 1009 (Okla. 1992).

Defendant asserts, contrary to Sundance's contention, that this language from *Schmidt* and *Elsken* is dicta because in those cases, there was no allegation of gross negligence. Doc. No. 220, at 2 n. 3. "In the absence of authoritative precedent from the [Oklahoma] Supreme Court, however, our job is to predict how that court would rule. [Oklahoma] Supreme Court dicta, which represents that court's own comment on the development of [Oklahoma] law, is an appropriate source from which this prediction may be made." *Carl v. City of Overland Park*, 65 F.3d 866, 872 (10th Cir. 1995) (citations omitted); *see also Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1093 (10th Cir. 2010) (same). This is especially true when the dicta is clear. *Valley Forge*, 616 F.3d at 1093. Based on the above language from *Schmidt* and *Elsken*, even assuming it is dicta, the Court predicts that the Supreme Court of Oklahoma would find that Defendant is not able to limit its liability for gross negligence by contract. It was not clear error for the Court to so find at the trial in this case.

**B. Non-Delegable Duty**

Defendant next argues that the Court erred when it held that any negligence of Tres Management, Inc. ("Tres") and Jim Browning ("Browning") could not be imputed

to Sundance.[2] Doc. No. 212, at 17. With regard to Sundance's claim for negligence, because the jury found Tres and Browning to be 25% at fault,[3] if the Court had ruled that their negligence could be imputed to Sundance, Sundance's damages would be reduced by 25%.[4] But the jury also found for Sundance on its breach of contract claim, for which there is no reduction in damages for contributory negligence.[5] Therefore, the undersigned finds that Defendant suffered no prejudice from the Court's ruling that Tres' and Browning's negligence could not be attributed to Sundance because its success on the breach of contract claim entitles it to the full $1.2 million judgment. Damages Verdict Form, Doc. No. 196; Judgment, Doc. No. 200; *see Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1336-37 (10th Cir. 1984) (holding that a trial court did not commit clear error when it did not reduce damages by the amount of the plaintiffs' contributory negligence, when the plaintiffs had also succeeded on their contract and fraud claims).[6]

---

[2] Therefore, Defendant argues, the Court erred in not including its Proposed Jury Instructions No. 8 and No. 9 concerning imputing negligence of Tres and Browning to Sundance. Doc. No. 212, at 17 n.8; Doc. No. 128, at 11-12.

[3] White Verdict Form—Negligence, Doc. No. 194.

[4] *See* OKLA. STAT. ANN. tit. 23, § 14 (West) ("Where such contributory negligence is shown on the part of the person injured, damaged or killed, the amount of the recovery shall be diminished in proportion to such person's contributory negligence.").

[5] Breach of Contract Verdict Form, Doc. No. 195; *see* OKLA. STAT. ANN. tit. 23, § 21 (West) ("For the breach of an obligation arising from contract, the measure of damages…is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."); *Chicago, R.I. & P. Ry. Co. v. Rogers*, 159 P. 1132, 1138 (Okla. 1916) ("The defenses of 'assumed risk' and 'contributory negligence' are separate and independent, the former arising out of contractual relations, and the latter not." (citations omitted)).

[6] Additionally, the Court finds no error in its ruling that there was no non-delegable duty in this case justifying imputing the negligence of Tres and Browning to Sundance. *See* Doc. No. 213, at 3 (lines 17-20).

### C. OSHA Narratives

Defendant next argues that the Court erred in admitting the OSHA Safety Narratives[7] because they were not authenticated, they were inadmissible hearsay, and their probative value was substantially outweighed by the danger of unfair prejudice. Doc. No. 212, at 22-25.

#### 1. Authentication

Defendant first asserts that the OSHA narratives were never authenticated. Under Federal Rule of Evidence 901(a), a proponent of evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." An official publication—"[a] book, pamphlet, or other publication purporting to be issued by a public authority"—is self-authenticating under Rule 902(5). At a hearing on the motions in limine, Defendant's counsel stated that he does not doubt that these narratives are OSHA reports, and admitted that Sundance obtained them through a Freedom of Information Act request. Doc. No. 217, Ex. 2, at 6 (lines 1-5). Although Defendant argues that the narratives are unsigned, and that there is no evidence of who prepared them or for what purpose, Doc. No. 212, at 22-23, that information is not necessary to authenticate the narratives, which are "publication[s] purporting to be issued by a public authority," OSHA. *See Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.*, 433 F. Supp. 2d 933, 944 (N.D. Ind. 2005) ("[T]he defendants have provided letters verifying that these reports are official United States government documents obtained through the

---

[7] These narratives are Plaintiffs' Exhibit 21 (OSHA Fatality Investigation Narrative) and Exhibit 22 (OSHA Safety Narrative). Doc. No. 212, at 22.

Freedom of Information Act. Therefore, the reports are admissible pursuant to Rules 901(7) and 902(5)."). The Court rejects Defendant's objection to the OSHA narratives on the basis of their authenticity.

### 2. Hearsay

Defendant next argues that the OSHA narratives are inadmissible hearsay. Because the narratives contain statements made out of court that were offered to prove the truth of the matters asserted therein, to be admissible, they must fall under an exception to the general rule against hearsay. *See* FED. R. EVID. 801, 802. The Court finds that the narratives fall under the public records exception to hearsay,[8] and that Defendant did not satisfy its burden of showing that the circumstances surrounding their creation indicate a lack of trustworthiness.

Under Federal Rule of Evidence 803(8), for a public record to qualify as a hearsay exception, it must be the case that "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." FED. R. EVID. 803(8)(B). In *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 n.11 (1988), the Supreme Court cited the Advisory Committee's nonexclusive list of four factors relevant to the trustworthiness analysis: "(1) the timeliness of the investigation; (2) the investigator's skill or experience; (3) whether a hearing was held; and (4) possible bias when reports are prepared with a view to possible litigation."

---

[8] FED. R. EVID. 803(8)(A)(iii) ("A record or statement of a public office if it sets out in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation.").

Defendant first argues that "there was no evidence to substantiate who prepared the exhibits, the investigator's skill and experience, whether the narratives were reviewed and approved by superiors, or the purpose for which prepared." Doc. No. 212, at 23. This is merely an attempt to shift Defendant's burden of proving a *lack* of trustworthiness onto Sundance to prove the narratives *are* trustworthy. *See* FED. R. EVID. 803(8)(B). In other words, Defendant points to no evidence demonstrating that the investigator *lacked* skill and/or experience, that the narratives were *not* reviewed and approved by superiors, or the purpose for which they were prepared. Although Defendant "is not necessarily required to introduce affirmative evidence of untrustworthiness," FED. R. EVID. 803 advisory committee's note, directing the Court to the lack of information that it has on this issue does not indicate that the narratives are untrustworthy. Defendant also states that "[t]he investigator had no firsthand knowledge of the facts surrounding the accident." Doc. No. 212, at 23. Because this would be true in nearly all OSHA investigations, as there is no need for an OSHA representative to be present at the scene until after an incident has occurred, this factor is not persuasive.

Next, Defendant point to the settlement agreement it entered into with OSHA. Doc. No. 212, at 23-24. But the case Defendant cites in which a court found this factor relevant did so because "the amendment to the fourth violation in the settlement agreement suggested that there was a modification to OSHA's report," and it was reasonable to conclude that OSHA had changed its position on what caused the accident. *Staskal v. Symons Corp.*, 706 N.W.2d 311, 317-18 (Wis. Ct. App. 2005); Doc. No. 212, at 23-24. Here, there is no evidence that OSHA modified its conclusions on the cause of

7

the accident when it entered into a settlement agreement with Defendant. Rather, Defendant asserts that the only change made was a reduction in penalties. Doc. No. 115, at 17. The Court is not persuaded by Defendant's argument that the penalty reductions "reasonably indicate[] that OSHA may have changed its position on the veracity of the findings in the report." *Id.*

Finally, Defendant argues that "[t]he preparer was unavailable for cross-examination" and "no hearing was conducted." Doc. No. 212, at 23. These two considerations alone do not "demonstrate why a time-tested and carefully considered presumption [of admissibility] is not appropriate" in this case. FED. R. EVID. 803 advisory committee's notes (quoting *Ellis v. Int'l Playtex, Inc.*, 745 F.2d 292, 301 (4th Cir. 1984)). Accordingly, the Court rejects Defendant's argument objecting to the admissibility of the OSHA narratives based on hearsay.[9]

### 3. Unfair Prejudice

Finally, Defendant contends that admission of the OSHA narratives unfairly prejudiced him at trial. Under Federal Rule of Evidence 403, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of … unfair prejudice." But "[a]lmost all evidence will be perceived by one side or the other to be prejudicial, and it is generally thought that the jury can best determine the truth when it has access to all the relevant admissible evidence." *S.E.C. v. Peters*, 978 F.2d 1162,

---

[9] To the extent Defendant objects to the "hearsay within hearsay" contained in the OSHA narratives [*see* Doc. No. 212, at 22], the Court directs Defendant to the Order entered February 9, 2015, in which the Court ruled that it would admit only those parts of the narratives that fall under the exception for statements by an opposing party, *see* FED. R. EVID. 801(d)(2), and any other non-hearsay. Doc. No. 179, at 1-2. If Defendant seeks to argue that statements that fall outside the scope of the Court's Order were admitted into evidence, it provides no support for that argument.

1171 (10th Cir. 1992). Therefore, "[t]he exclusion of relevant evidence under Rule 403 is an extraordinary remedy to be used sparingly." *Id.* (quoting *K-B Trucking Co. v. Riss Int'l Corp.*, 763 F.2d 1148, 1155 (10th Cir. 1985) (internal quotation marks omitted)).

In support of its argument that these narratives unfairly prejudiced it, Defendant cites a case from the Middle District of Georgia, in which that court stated, "prejudice … could result from the jury placing too much weight on the OSHA investigator's questionable determinations regarding ultimate issues which the jury itself is responsible for deciding." Doc. No. 212, at 24 (quoting *Hines v. Brandon Steel Decks, Inc.*, 754 F. Supp. 199, 201 (M.D. Ga. 1991)). This reasoning is problematic for two reasons. First, "[a]n opinion is not objectionable just because it embraces an ultimate issue." FED. R. EVID. 704(a). Second, if the Court were to accept Defendant's argument, reports produced by administrative agencies that go to an ultimate issue in the case would never be admissible, and that was clearly not Congress' intent when it explicitly contemplated the admission of factual findings from a government investigation in Rule 803. It was not clear error for the Court to rule that admission of the OSHA narratives, subject to the limits imposed in its prior Order, *see* Doc. No. 179, is consistent with Rule 403.

### D. Methamphetamine Evidence

Finally, Defendant argues that the Court should have excluded evidence of Rod Dotson's use of methamphetamine[10] because it had no probative value, or if it did, the risk of unfair prejudice substantially outweighed its probative value. Doc. No. 212, at 25.

---

[10] This evidence included the video depositions of Dr. Bryon Curtis and Dr. Inas Yacoub of the Oklahoma Medical Examiner's Office ("OME") and Plaintiffs' Exhibit 23, the OME's Report of Investigation. Doc. No. 212, at 25.

1. **Relevance**

First, Defendant contends that the expert testimony concerning methamphetamine did not link Mr. Dotson's drug use to his physical or mental condition at the time of the accident, and therefore there is no reasonable certainty that the drugs in his system caused or contributed to the accident. *Id.* at 25-26. It argues that expert testimony is required to establish that Mr. Dotson was impaired and that this impairment contributed to the accident. Doc. No. 220, at 9. In support of this argument, Defendant directs the Court to a decision from the Montana Supreme Court, *Christofferson v. City of Great Falls*, 74 P.3d 1021, 1031 (Mont. 2003), in which the court repeated its earlier holding that "whether a defendant's ability to drive safely was diminished as a result of his consumption of drugs require[s] expert opinion testimony." Doc. No. 212, at 25. Defendant offers no authority from an Oklahoma court or the Tenth Circuit Court of Appeals on this issue. And even if *Christofferson* were on point, the fact that the undersigned came to a different conclusion than a non-binding decision from another court does not demonstrate a clear error of judgment on this Court's part. *C.f. Phillips v. Cudd Pressure Control, Inc.*, No. CIV-09-1197-M, 2012 WL 2120770, at *1 (W.D. Okla. June 11, 2012).

The Court is also persuaded by an opinion from the District of Hawaii, *Durham v. Cnty. of Maui*, 742 F. Supp. 2d 1121 (D. Haw. 2010). In *Durham*, a man driving an automobile allegedly failed to obey a stop sign, which resulted in him colliding with another vehicle. *Id.* at 1124. He died as a result of his injuries and a port-mortem blood test signed by a Dr. Wong confirmed the presence of THC, the active ingredient in marijuana. *Id.* Dr. Wong stated in his report that the amount of THC detected indicates

10

that the driver had recently used marijuana. *Id.* The court held that "[e]vidence of drug consumption, when combined with other evidence attributing fault, may be 'highly relevant to the issue of the causal relationship between [a party's conduct] and [ ] the injuries.'" *Id.* at 1130 (citations omitted) (quoting *Loevsky v. Carter*, 773 P.2d 1120, 1127 (Haw. 1989)). The court so held, even though Dr. Wong did not provide an opinion regarding impairment, because "a jury could reasonably infer from the CLH Report that marijuana did in fact impair Mark Durham's ability to operate the subject vehicle in a safe manner." *Id.* (footnote and citations omitted).

The reasoning in *Durham* is applicable in this case. Although Dr. Curtis testified that he could not determine from the toxicology results whether Mr. Dotson was impaired at the time of the accident,[11] Sundance presented evidence at trial that Mr. Dotson was instructed not to pull on the drilling line and disobeyed that order, which resulted in the drilling line parting and the blocks falling to the floor, striking and killing him. Given the presence of methamphetamine in his system, and Dr. Curtis' testimony regarding its possible effects on one's behavior, including causing impulsive and aggressive behavior,[12] the jury could have reasonably concluded that Mr. Dotson's drug use, whether from a prescription or an illicit source, affected his ability to perform his job safely and contributed to the accident.[13] Therefore, the Court did not err in finding this evidence relevant.

---

[11] Doc. No. 114, Ex. 6, at 18 (lines 13-17).
[12] *Id.* at 10 (lines 14-21).
[13] *See, e.g.*, *Whitson v. Middleton*, 898 F.2d 950, 952 (4th Cir. 1990) ("[I]ntoxication is to be determined from all relevant evidence; evidence of blood alcohol content is only one method of proof."); *Harris v. Kubota Tractor Corp.*, No. Civ.04-2490, 2006 WL 2734460, at *3 (W.D. La. Sept. 22, 2006) (admitting

11

## 2. Unfair Prejudice

Defendant next argues that any probative value of the evidence of Mr. Dotson's use of methamphetamine is substantially outweighed by the danger of unfair prejudice under Rule 403. *See* Doc. No. 212, at 26. Trial courts are given a "large degree of deference" on this question. *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 (10th Cir. 2001). The Tenth Circuit has held in a medical malpractice case that when testimony "simply noted the obvious—drug use is an important indicator of a patient's physical condition and is crucial to determining whether to undertake additional testing," evidence of the plaintiff's prior drug use was properly admissible under Rule 403. *Id.* (citation and footnote omitted). Defendant has not directed the Court to any testimony that was beyond the obvious—the amount of methamphetamine found in his system and the possible effects this could have had on him. "While [Defendant] would have preferred evidence of [Mr. Dotson's] drug use not be presented to the jury, simple prejudice alone is insufficient to warrant exclusion." *Id.* (citation omitted). Giving this evidence "its maximum reasonable probative force and its minimum reasonable prejudicial value," *Peters*, 978 F.2d at 1171 (citation omitted), the Court concludes that it did not commit clear error in ruling that admission of the methamphetamine evidence is consistent with Rule 403.

---

evidence of positive drug tests despite the fact that these tests did not prove plaintiff was impaired because "it may, in the mind of the jury, tend to establish that Harris was impaired at the time of the accident").

12

## **Conclusion**

In accordance with the foregoing, the Court concludes that it was not clear error for the undersigned to rule that, under Oklahoma law, Defendant cannot limit its liability for gross negligence by contract, and that the OSHA narratives and evidence of the presence of methamphetamine in Mr. Dotson's system was admissible. Further, any alleged error in holding that the conduct of Tres and Browning cannot be imputed to Sundance did not substantially prejudice Defendant's rights because the jury found for Sundance on its breach of contract claim, for which there is no reduction of damages for contributory negligence. Defendant's Motion for New Trial [Doc. No. 212] is DENIED.

IT IS SO ORDERED this 29th day of April, 2015.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE